UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

| | |
|---|---|
| Capital 7 Funding, | RICO STATEMENT |
| *Plaintiff* | Docket No. 17-cv-2374 |
| - against - | |
| Wingfield Capital Corporation, Prestige Investment Associates, Inc., d/b/a Prestige Investments USA, and First Choice Payment Systems, Inc., d/b/a 1st Choice Payments<br>*Corporate Defendants* | |
| And | |
| Burgis Sethna, a/k/a Seth Burgess, Heath Wagenheim, Joseph Rabito, Damian Laljie a/k/a Damian Laltie, and John Does 1 through 15,<br>*Individual Defendants* | |

----------------------------------------------------------------X

Pursuant to the Court's Order at ECF No. 32, Plaintiff Capital 7 Funding submits the below RICO Statement as well as exhibits thereto.

**1. State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c), and/or (d).**

Response: Defendants' conduct violates 18 U.S.C. §§ 1962(c) and (d).

**2. List each defendant and state the alleged misconduct and basis of liability of each defendant.**

Response:

a. Wingfield Capital Corporation: Participated in the scheme to defraud Plaintiff and served as the co-owner of the 3 Leaf joint venture, which is also the RICO enterprise. It received money Defendants siphoned from the 3 Leaf joint enterprise and its officers and employees participated in Defendants' fraudulent scheme.

1

b. Prestige Investment Associates, Inc., d/b/a Prestige Investments USA: Owned by Defendant Sethna and the landlord of 3 Leaf, which siphoned funds from the joint venture via rent payments.

c. First Choice Payment Systems, Inc., d/b/a 1st Choice Payments: company owned by Defendant Sethna and to which Defendant Sethna siphoned funds.

d. Burgis Sethna (a/ka Seth Burgess): leader of and participant in the scheme to defraud Plaintiff. Made multiple misrepresentations to Plaintiff and its representatives regarding the nature of the customers he had found for the 3 Leaf joint venture. Sethna threatened 3 Leaf employees to surrender portions of their paychecks to him. Siphoned money from Plaintiff via the imposition of phony independent sales organization (ISO) broker fees that he pocketed instead of paying a legitimate ISO broker. Defendant Sethna conspired with the other Defendants to operate and conceal this scheme to defraud plaintiff.

e. Heath Wagenheim: chief technology officer of the 3 Leaf joint venture and president of Defendant Wingfield Capital Corporation. He participated in Defendants' scheme to defraud by supporting Defendant Sethna's misrepresentations to plaintiff and its representatives. He also assisted in concealing Defendants' misconduct from plaintiffs by misrepresenting the operation of 3 Leaf to plaintiff. Defendant Wagenheim also conspired to with the other Defendants to operate and conceal the scheme to defraud Plaintiff.

f. Joseph Rabito: chief financial officer of the 3 Leaf joint venture. Defendant Rabito participated in the scheme to defraud Plaintiff by making misrepresentations and falsifying records about the day-to-day expenses at 3 Leaf, the amounts recouped from customers, the existence of bona fide third-party customers, and the operations of 3 Leaf. Defendant Rabito conspired with Defendants to defraud Plaintiff.

g. Damian Laljie: chief operating officer of the 3 Leaf joint venture. Defendant Laljie participated in the scheme to defraud Plaintiff by making misrepresentations and falsifying records about the day-to-day expenses at 3 Leaf, the amounts recouped from customers, the existence of bona fide third-party customers, and the operations of 3 Leaf. Defendant Laljie also conspired with Defendants to defraud Plaintiff.

h. John Doe Defendants 1 through 15: unknown individuals who assisted the Defendants in the operation of their fraudulent scheme by falsifying

documents, siphoning money away from 3 Leaf, intimidating 3 Leaf's employees, or posing as legitimate customers of 3 Leaf.

**3. List the alleged victims and state how each victim was allegedly injured.**

Response: Capital 7 Funding is the sole victim named in the Complaint. Capital 7 Funding's injuries fall into three categories:

A. Defendants' unilateral seizure of 3 Leaf's accounts in October 2016 by removing Capital 7 and its representatives as co-signatories on the account. Defendants effectively stole approximately $117,300.00 in this manner.

B. Defendants' misrepresented that each funding transaction required payment of a broker's fee to a third-part when, in reality, Defendants pocketed the fee and hired no third-party broker. Defendants fraudulently obtained approximately $233,000 in this manner.

C. Defendants also injured Plaintiff through a complicated scheme of presenting customers for the 3 Leaf joint venture to Plaintiff while claiming that Defendants were not able to provide any of the funds for the purchase of the customers' future receivables. This induced Plaintiff to transfer the purchase price into accounts accessible by Defendants for the purposes of purchasing the receivables, which Defendants would then transfer to the sham customers. Each sham customer would then make daily payments to accounts accessible by Defendants and Plaintiffs, which Defendants would, in all cases, eventually redirect to accounts under their control and to which Plaintiff had no access, stealing the remaining payments due to Plaintiff. Defendants fraudulently obtained approximately $970,000.00 in this manner.

**4. Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering shall include the following information:**

**a. List the alleged predicate acts and the specific statutes that were allegedly violated;**

Response: The predicate acts consist of wire fraud in violation of 18 U.S.C. §1343, money laundering in violation of 18 U.S.C. §1956, and extortion under N.Y. Penal Law § 155.05(2)(e).

**b. Provide the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding each predicate act;**

3

Response:

i. The wire fraud predicate acts consist in part of misrepresentations made by Defendant Sethna over the telephone regarding the nature and status of each transaction with a customer and the redirection of the daily transfers of money by wire from customers' accounts to those under control of Defendants, as set forth in the spreadsheet attached hereto as **Exhibit A**. **Exhibit A** lists the dates of each such predicate act, the statute violated, and a description of the contents of Defendants Sethna's misrepresentations.

ii. The bulk of the predicate acts, however, consist of Defendants' redirection of daily automatic wire and bank transfers into accounts under Defendant's control. As set forth more fully in the Complaint at paragraphs 27 through 33, Plaintiff and Defendants agreed to operate a joint venture known as 3 Leaf which would buy future receivables from retail businesses in exchange for immediate cash payments to those businesses. The retail businesses would pay the joint venture back via automatic daily bank or wire transfers from their accounts or directly from their credit and debit card processers until 3 Leaf had received the amount it had agreed upon with the customer. For example, 3 Leaf agreed to pay non-party Sabre Transportation, Corp., ("Sabre") $200,000.00 in a lump sum in exchange for $280,000.00 of Sabre's future receivables, payable as a daily transfer of $1,115.54 from Sabre's account in 3 Leaf's account. Capital 7 contributed the entire $200,000.00 to 3 Leaf so that the joint venture could make the purchase. In September of 2016, however, Defendants removed Plaintiff and its representatives as co-signatories on 3 Leaf's account, effectively redirecting the daily payments away from Plaintiff and to Defendants, siphoning over $50,000 of the $280,000 worth of receivables.

In a number of transactions, for which Plaintiff also supplied all the funding, the customer made its daily transfers directly to accounts controlled by Defendants and Defendants retained the proceeds of the transaction. Attached as **Exhibit B** is a spreadsheet setting forth for each 3 Leaf customer the date range during which Defendants siphoned daily automatic bank or wire transfers into accounts under their control instead of 3 Leaf's account. Defendants Wingfield Capital Corporation, Sethna, Wagenheim, Laljie, and Rabito were all involved in effecting siphoning the money from the 3 Leaf joint venture.

4

iii. The money laundering predicate acts consisted mainly of Defendants' siphoning of funds out of 3 Leaf and using those same funds to further finance their scheme to defraud Plaintiff. Specifically, Defendants would take the proceeds of their fraud and make small payments back to 3 Leaf or plaintiff in order to conceal their fraud for a time. The dates and nature of these transfers, made to conceal Defendants' crime, are set forth in **Exhibit C**. Defendants Wingfield Capital Corporation, Sethna, Wagenheim, Laljie, and Rabito were all involved in effecting these transfers.

iv. The extortion predicate act occurred throughout the operation of 3 Leaf, from January of 2016 through September of 2016. Defendant Sethna would repeatedly threaten 3 Leaf's employees to surrender portions of their paychecks to him or face violence. Furthermore, in July of 2016, Defendant Sethna and his accomplice Mr. Eddie Batz, threatened Plaintiff's representatives Radion Aminov, Farid Peysakhov, and Laser Yadgarov with violence if they would not allow Defendants to retain money paid to 3 Leaf customer 7110 Partners, LLC, which had posed as a customer of 3 Leaf.

**c. If the RICO claim is based on the predicate offenses of wire fraud, or fraud in the sale of securities, the "circumstances of fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the time, place, and contents of the alleged misrepresentation or omissions, and the identity of persons to whom and by whom the alleged misrepresentations or omissions were made;**

Response: These facts are set forth in **Exhibit A**.

**d. Describe how the predicate acts form a "pattern of racketeering activity";**

Response: The predicate acts of wire fraud consisting of automatic wire transfers of funds into Defendants' accounts occurred on a daily basis and continued for months at a time for each sham customer. The wire fraud alone constitutes a pattern. Furthermore, Defendants repeatedly presented Plaintiff with sham customers and sham transactions that Defendants misrepresented as bona fide. Defendant Sethna's attempts to extort 3 Leaf's employees occurred repeatedly over several months as well.

**e. State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe.**

> Response: As set forth elsewhere in this Statement, the common plan of Defendants was to defraud Plaintiff via the 3 Leaf joint venture. Defendants intended each predicate act to aid them in siphoning money from 3 Leaf and Plaintiff. The wire fraud predicate acts were intended to deceive Plaintiffs or to redirect money to Defendants' accounts; the money laundering predicate acts were intended to conceal the nature of their scheme by returning a portion of the money to Plaintiff; the extortion predicate acts were designed to siphon money from 3 Leaf via its employees and to intimidate Plaintiff into allowing Defendants to keep the proceeds of their scheme.

**5. Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:**

**a. State the names of the individuals, partnerships, corporations, associations, or other legal entities that allegedly constitute the enterprise;**

> Response: The enterprise consists of the 3 Leaf joint venture in which Defendants Wingfield Capital Corporation, Burgis Sethna, Heath Wagenheim, Damian Laljie, and Joseph Rabito participated in the enterprise.

**b. Describe the structure, purpose, function and course of conduct of the enterprise;**

> Response: 3 Leaf was incorporated as a joint venture between Plaintiff and Defendant Wingfield Capital Corporation. However, it was actually controlled at all times by Defendant Sethna. Defendant Sethna orchestrated Defendants' scheme and Defendants Wagenheim, Rabito, and Laljie followed Defendant Sethna's direction. 3 Leaf was intended to operate as a funding company specializing in the purchase of a set amount of future receivables from retail businesses in exchange for an immediate cash payment. Customers would pay 3 Leaf back via automatic daily transfers from their accounts or their credit card processors until it had paid the agreed-upon amount to 3 Leaf. In reality, Defendants always intended to operate 3 Leaf as a vehicle to defraud Plaintiff by recruiting sham customers, convincing Plaintiff to fully fund the purchase of the sham customers' receivables, and then siphoning off the payments made by the sham customers to Defendants.

> Defendants salted bona fide customers among the sham customers in order to conceal their scheme.
>
> 3 Leaf also had a number of employees, from administrative staff to salespeople, who were not involved in Defendants' scheme. In fact, a number were victims of Defendants scheme insofar as Defendant Sethna routinely demanded that 3 Leaf's employees transfer a portion of their paychecks to him.

**c. State whether any defendants are employees, officers or directors of the alleged enterprise;**

> Response: Defendants Laljie, Rabito, and Wagenheim were officers of 3 Leaf. Defendant Sethna was an employee or independent contractor who worked for 3 Leaf.

**d. State whether any defendants are associated with the alleged enterprise;**

> Response: All Defendants are associated with the 3 Leaf Enterprise.

**e. State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise.**

> Response: Defendants Prestige Investment Associates, Inc., and First Choice Payment Systems, Inc., are separate from the enterprise. The remaining Defendants are members of the enterprise.

**6. Describe the alleged relationship between the activities of the enterprise and how the pattern of racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

> Response: The enterprises daily activities consisted mostly of the racketeering activity, although 3 Leaf did have a handful of legitimate customers.

**7. Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

> Response: 3 Leaf itself operated as an interstate enterprise insofar that a large number of its customers operated outside of New York, thus payments to and from these customers consist of interstate commerce.

7

**8. With respect to the allegation of a violation of 18 U.S.C. § 1962(c), provide the following information:**

a. State who is employed by or associated with the enterprise; and

Response: Defendants Laljie, Rabito, and Wagenheim were officers of 3 Leaf. Defendant Sethna was an employee or independent contractor who worked for 3 Leaf.

**b. State whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).**

Response: No.

**9. With respect to the allegation of a violation of 18 U.S.C. § 1962(d), describe the alleged conspiracy.**

Response: Defendants conspired to operate the scheme as set forth in previous responses.

**10. Describe the alleged injury to business or property.**

Response: The injury consists of money stolen by Defendants from Plaintiff. As set forth above, Plaintiff and Defendants agreed to operate a joint venture

**11. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

Response: The primary goal of Defendants' scheme was to induce Plaintiff into funding transactions in which the 3 Leaf joint venture purchased receivables from customers recruited by Defendants. The customers would receive a cash payment from 3 Leaf, which customers would repay for the agreed-upon amount via daily automatic wire transfers from their accounts to either Defendant Wingfield's account or 3 Leaf's account. Defendants would then siphon the proceeds from these transactions into accounts under Defendants' control. Because Plaintiff provided the funding for each transaction and never agreed to let Defendants retain any money from these transactions, Defendants effectively stole portions of the proceeds of each transaction set forth in the Second Amended Complaint. Furthermore, a large number of the customers Defendants recruited were sham customers with whom Defendants split the money they stole from Plaintiff.

**12. List the damages sustained by reason of the violation of Section 1962, indicating the amount for which each defendant allegedly is liable.**

> Response: $1,320,300.00, for which the Defendants are jointly and severally liable.

**13. Provide any additional information that you feel would be helpful to the Court in trying the RICO claim.**

> Response: This is not the first suit against Defendant Sethna for dishonesty and misconduct in the operation of a business. Defendant Sethna, as well as entities he owned, was sued in 2010 in the Southern District of New York for fraud and breach of contract, among others, as set forth in the complaint in that action attached hereto as **Exhibit D**. In that case, the plaintiff sued Sethna for fraudulently taking plaintiff's money in exchange for securing a letter of credit even though Sethna never intended to follow through. Additionally, the complaint in that case sets forth instances in which Sethna lied to the plaintiff, attempted to induce the plaintiff to sign fraudulent document to participate in a private placement without actually being qualified under SEC regulations, and to sign off on a falsified list of assets to secure a loan. Essentially, Sethna attempted to defraud the plaintiff and then recruit him into Sethna's criminal enterprise.
>
> Judge Griesa subsequently denied Sethna's motion for summary judgment. *Shelton v. Sethna*, 2012 U.S. Dist. LEXIS 42194, at *26 (S.D.N.Y. Mar. 26, 2012). Sethna lost the suit in a default judgment for over $20 million after he went through two sets of attorneys and ceased participating in the case. Judgment attached as **Exhibit E.**
>
> His first attorney sought to be relieved as counsel in part because Sethna had contacted the plaintiff "with talks of settlement between plaintiff and myself which is against ethical obligations and a complete fabrication," as set forth in the affirmation of Anthony J. LoPresti, attached hereto as **Exhibit F**.
>
> Sethna's next attorney, Michael T. Lamberti, moved to be relieved on the grounds that Sethna had ceased communicating with him. Mr. Lamberti also submitted a worn affirmation, attached hereto as **Exhibit G**, in support stating that Sethna had repeatedly made misrepresentations to him about securing new counsel, delaying his motion to be relieved for months.

The Southern District Suit and the affirmations of Sethna's counsel, demonstrate that Defendant Sethna routinely lies to those with whom he does business, as he has to Plaintiff here. He furthermore appears to be an active recruiter for myriad fraudulent schemes, including schemes to secure loans via fraud, which is similar to his recruitment of sham companies to assist in Defendants' defrauding Plaintiff in exchange for a portion of the proceeds of the fraud. The judgment against Sethna and his businesses for over $20 million also provides an explanation for why Sethna both introduced himself to Plaintiff as "Seth Burgess" and why he avoided putting his name on any contract, letter, or other paper tying him personally to Defendant Wingfield Capital Corporation or the 3 Leaf joint venture; he had been caught once and clearly has sought to avoid liability for Defendants' scheme to defraud Plaintiff

Dated:  February 1, 2018

_____/s/_____

Nicholas Bowers, Esq.
GARY TSIRELMAN, P.C.
Attorneys for Plaintiff
129 Livingston Street
2nd Floor
Brooklyn, NY  11201