**Docket No. 17cv2374**

# EXHIBIT B

Dobbs, Justin 4/26/2019
For Educational Use Only

New York Auto. Ins. Plan, Not Reported in F.Supp.2d (1998)
RICO Bus.Disp.Guide 9611

KeyCite Yellow Flag - Negative Treatment
Distinguished by United States Fire Ins. Co. v. United Limousine Service, Inc., S.D.N.Y., February 6, 2004

1998 WL 695869
United States District Court, S.D. New York.

NEW YORK AUTOMOBILE INSURANCE PLAN, Allstate Insurance Co., State Farm Insurance Companies, Plaintiffs,
v.
ALL PURPOSE AGENCY & BROKERAGE, INC., Anna Kitsis, A R Ways Constructing Corp., Vekaterina Bass, Adt Custom Mirror & Furniture, American Standards Cabinets, Inc., Semyon Mednik, Efim Milrud, Isaak Kipnis, Defendants.

No. 97 Civ. 3164(KTD).
|
Oct. 6, 1998.

**Attorneys and Law Firms**

Arthur J. Ciampi, Morrison Cohen Singer & Weinstein LLP, New York, New York, for Plaintiffs.

Charles G. Fiore, Lewis & Fiore, New York, New York, for Defendants.

*MEMORANDUM & ORDER*

DUFFY, J.

*1 This case arises from a scheme orchestrated by defendants All Purpose Agency and Brokerage, Inc. ("All Purpose") and Anna Kitsis ("Kitsis") to fraudulently obtain reduced automobile insurance premium rates. The plaintiffs have moved for summary judgment and injunctive relief. For the following reasons, their motion is granted in part and denied in part.

*Factual Background*

*Dramatis Personae*

The New York Automobile Insurance Plan (the "Plan") is an unincorporated entity formed pursuant to § 5301 *et seq.* of the Insurance Law of the State of New York. New York residents who are eligible for but unable to obtain automobile insurance may submit an application to the Plan. The Plan then assigns applicants to automobile insurers licensed to do business in the State of New York who, in turn, are required to accept assignments from the Plan.

Plaintiffs Allstate Insurance Company ("Allstate") and State Farm Mutual Automobile Insurance Companies ("State Farm") are each Illinois corporations duly licensed to sell automobile insurance in the State of New York. Both are required to and do accept assignments from the Plan.

To obtain insurance through the Plan, applicants must submit an application through a Certified Plan Producer ("Producer"). A Producer is an insurance broker certified by the Plan to submit applications. The application is executed by both the applicant and the Producer and thereafter submitted by the Producer to the Plan for assignment to an authorized insurer.

The Plan provides that the Producer and applicant must both certify as truthful all information included in the application—including information concerning where the applicant's vehicle is to be "garaged" or used. The Plan also directs the Producer to properly write and compute the premium rate of a policy. The Plan does not verify the information on the application nor the Producer's computations.

The premium rates are set by the Insurance Department of New York State which divides the State into designated territories and establishes premium rates for coverage of particular types of vehicles in each designated territory in the State. The premium rate is set separately for each territory where the vehicle is garaged, with higher premium rates for vehicles garaged in New York City than for those garaged in other regions of the state.

Defendant All Purpose was an insurance broker located Brooklyn, New York which was certified as a Producer. Defendant Anna Kitsis was the sole shareholder and only full time employee of All Purpose. The remainder of the

New York Auto. Ins. Plan, Not Reported in F.Supp.2d (1998)
RICO Bus.Disp.Guide 9611

defendants are individuals who applied for auto insurance from the Plan through All Purpose (the "Insured–Defendants").

*The Complaint*

On May 1, 1997, the Plaintiffs filed the Complaint in this action. The Complaint describes a scheme orchestrated by defendants Kitsis and All Purpose (collectively "Producer–Defendants") whereby Plan applications were submitted by the Producer–Defendants on behalf of the Insured–Defendants and many others (collectively "Insureds") that contained false information to obtain insurance at rock-bottom premiums.

**\*2** This scheme was apparently uncovered as a result of an investigation conducted by plaintiff State Farm. The investigation revealed that, from 1995 to 1997, the Producer–Defendants submitted applications on behalf of the Insureds that: (i) falsely stated the place of garaging and operation of the Insureds' vehicles to be territories outside of New York City; and (ii) utilized forged and altered drivers' licenses in support of the applications.

*Foth Affidavit*

On June 12, 1998, the plaintiffs moved for summary judgment. In support of their motion, plaintiffs submitted an affidavit from Donald Foth, Superintendent of plaintiff State Farm. In the affidavit, Foth outlines the discoveries uncovered during State Farm's investigation into the activities of the Producer–Defendants.

Foth states that All Purpose and Kitsis submitted 127 applications to the Plan that falsely listed the garaging location for the Insured's vehicle. For all those vehicles, one of three locations was used:

- 80 vehicles listed on applications as garaged at 12 Thatcher Drive, Altamont, New York;

- 28 vehicles listed on applications as garaged at 1 Columbia Place, Albany, New York;

- 19 vehicles listed on applications as garaged at 1737 Union Street, Schenectady, New York.

According to Foth, the investigation revealed that the vehicles at issue were not actually garaged at the locations above, but rather, were garaged and operated in New York City. To that end, Foth details the evidence gathered over the course of State Farms' investigation. Foth also provides records from State Farms' files supporting his claims.

*The Mednik Affidavit*

Also in support of their summary judgment motion, the plaintiffs submitted an affidavit from one of the Insured–Defendants—Semyon Mednik—that describes in detail his dealings with the Producer–Defendants.

In his affidavit, Mednik states that he first learned of All Purpose in August 1994 after he received a telephone solicitation at his home in his native language—Russian—offering "cheaper insurance". One year after receiving the solicitation, he called the number given in the solicitation and spoke with Anna Kitsis. Mednik then visited All Purpose's office in Brooklyn where Kitsis informed him that, in order to obtain cheaper insurance, Mednik would have to use a different address than his actual address in Brooklyn.

At Kitsis' direction, Mednik applied for a new drivers' license using 12 Thatcher Drive, Altamont, New York, as his address. Kitsis told Mednik that she would use that address on his Plan application. Kitsis also informed Mednik that, in order to have mail addressed to him at the 12 Thatcher Drive location forwarded to his actual address in Brooklyn, Mednik would have to pay fifty dollars. Mednik gave Kitsis a check for fifty dollars made payable to a company called "Altech".

Subsequently, Mednik received his drivers license at his home in Brooklyn. The license arrived in an envelope addressed to Mednik at his Brooklyn address with an Altamont, New York post mark. Inside the envelope with the Altamont post mark was a sealed envelope from the Department of Motor Vehicles addressed to the 12 Thatcher Drive location that actually contained the license.

**\*3** Kitsis then submitted Mednik's application to the Plan using the 12 Thatcher Drive address. As a result,

New York Auto. Ins. Plan, Not Reported in F.Supp.2d (1998)
RICO Bus.Disp.Guide 9611

Mednik received insurance from plaintiff State Farm. The insurance documents that Mednik received from State Farm indicated that his address was 12 Thatcher Drive, Altamont, New York. Like the drivers license, the material that Mednik received from State Farm was received unopened in an envelope with an Altamont, New York postmark.

*The Kitsis Deposition*

In connection with this lawsuit, the plaintiffs deposed defendant Anna Kitsis on October 30, 1997. At that deposition, Kitsis asserted her Fifth–Amendment privilege against self-incrimination approximately fifty times—as to virtually every question relating to her activities with All Purpose and submission of applications to the Plan.

For example, Kitsis refused to answer questions concerning the submission of applications to the Plan. She invoked the privilege when asked whether she instructed applicants to change their addresses on their drivers' license or their Plan applications. She also invoked the privilege when asked whether she knew the Insured–Defendants and other individuals who allegedly submitted fraudulent applications through All Purpose—including Semyon Mednik. She also refused to testify concerning the three garaging locations.

*Causes of Action*

Based on the scheme orchestrated by the Producer–Defendants, the plaintiffs claim violations of:

- Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), and 1964(c) (Claims 1–3);

- New York General Business Law §§ 349 *et seq.* (Claim 8);

- Fraud (Claims 5 & 7);

- Conversion (Claim 6).

Plaintiffs also seek a permanent injunction to enjoin defendants from "continuing to violate Plan rules and the statutes of the State of New York" (Claim 4).

*Discussion*[1]

Summary judgment is appropriate when, viewing the evidence in a light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (court to inquire whether there is evidence favoring the nonmoving party sufficient for a jury to return a verdict for the party).

On a motion for summary judgment, the moving party must initially satisfy a burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial" in order to survive the motion. Fed.R.Civ.P. 56(e); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986).

*4 While the Court must construe all evidence and inferences in favor of the nonmoving party, to sustain its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Mere conclusory allegations or denials will not suffice. *Williams*, 781 F.2d at 323.

New York Auto. Ins. Plan, Not Reported in F.Supp.2d (1998)
RICO Bus.Disp.Guide 9611

Here, the Plaintiffs have clearly met their burden, and the Producer–Defendants have failed to meet theirs'. The Producer–Defendants rely solely on the four disputed issues of fact listed in their Local Rule 56.1 statement. They have, however, supplied no evidence to support their claims that disputed issues of fact exist concerning (1) who submitted the Fund applications at issue, and (2) whether the Producer–Defendants had knowledge that the information contained in the applications was false and where the insured vehicles were actually used. (Producer–Defendants' Rule 56.1 Stmt at ¶ 1–2).[2]

Also undermining the Producer–Defendants' claims is the fact that Kitsis invoked her Fifth Amendment privilege and refused to answer questions concerning precisely the issues that she alleges are in dispute. Such an invocation of the Fifth Amendment privilege does not free the Producer–Defendants from adducing proof in support of their burden and will not prevent an adverse finding or even summary judgment. *See* *United States v. Certain Real Property,* 55 F.3d 78, 83 (2d Cir.1995) (citations omitted). Moreover, it is well settled that a court may draw adverse inferences against a party to a civil action when that party refuses to testify in the face of probative evidence. *See* *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).

Thus, because the Producer–Defendants have supplied no evidence to support their claims of a factual dispute, I must find that there are no disputed issues of fact. Because the undisputed facts do not support all of the plaintiffs' causes of action, however, I turn to the legal merits of the plaintiffs' claims—addressing only the Producer–Defendant's liability and saving the issue of damages for further proceedings.

I. *RICO Claims*
In considering RICO claims, courts must attempt to achieve results "consistent with Congress's goal of protecting legitimate business from infiltration by organized crime." *United States v. Porcelli,* 865 F.2d 1352, 1362 (2d Cir.), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). To that end, courts must ensure that RICO's severe penalties are limited to enterprises consisting of more than simple conspiracies to perpetrate acts of racketeering. *See* *Schmidt v. Bank,*— F. Supp.2d—, No. 98 Civ. 2901, 1998 WL 461295 at *2 (S.D.N.Y. August 6, 1998) (internal quotation marks and citations omitted). Thus, courts must be weary of the putative RICO case that is really "nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." *Id.* (*citing* *In re Integrated Resources Real Estate,* 850 F.Supp. 1105, 1148 (S.D.N.Y.1994)).

*5 Here, an examination of the alleged racketeering enterprise reveals that the plaintiffs' RICO claims are nothing more than an attempt to extract treble damages from an ordinary fraud case. As described in the complaint, plaintiffs claim that the enterprise included:

> all persons or entities who were associated in fact with Producer–Defendants All Purpose and Kitsis including but not limited to the Insured–Defendants for the purpose of using the facilities of the Plan and its assignment mechanism to fraudulently obtain insurance coverage ...

(Complaint at ¶ 42). Such an association-in-fact does not constitute a racketeering enterprise.

In essence, plaintiffs allege that fraudulent insurance applications were submitted to the Plan through one insurance broker—the Producer–Defendants—but on behalf of numerous unrelated Insureds. This is a classic "hub and spoke" conspiracy, in which the Producer–Defendants were the "hub" and the various Insureds (including the Insured–Defendants) were the "spokes". Such a scheme is not one true common law conspiracy nor is it a RICO enterprise.[3] *See* *First Nationwide Bank v. Gelt Funding, Inc.,* 820 F.Supp. 89, 98 (S.D.N.Y.1993), *aff'd,* 27 F.3d 763 (2d Cir.1994), *cert. denied,* 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995) (*quoting*

New York Auto. Ins. Plan, Not Reported in F.Supp.2d (1998)
RICO Bus.Disp.Guide 9611

*Kotteakos v. United States,* 328 U.S. 750, 769, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

A RICO enterprise is statutorily defined as "any individual partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In interpreting this statute, the Supreme Court has defined a RICO enterprise as a "group of persons associated together for a common purpose of engaging in a common course of conduct ... [It is] proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

Courts in the Second Circuit must look to the "hierarchy, organization, and activities of an association-in-fact to determine whether its members function as a unit." *United States v. Coonan,* 938 F.2d 1553, 1560–61 (2d Cir.1991), *cert. denied,* 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992). For an association of individuals to constitute an enterprise, the individuals must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *See First Nationwide,* 820 F.Supp. at 98 (quoting *Moll v. U.S. Life Title Ins. Co.,* 654 F.Supp. 1012, 1031 (S.D.N.Y.1987)).

In *First Nationwide Bank v. Gelt Funding, Inc.,* the court was faced with facts virtually identical to those at bar—the "enterprise" consisted of a scheme of fraudulently obtained loans involving one mortgage broker and several different borrowers seeking unrelated loans. *First Nationwide,* 820 F.Supp. at 97. The court found that such a classic "hub and spoke" arrangement could not constitute a RICO enterprise. *Id.* at 97–98.

*6 Likewise, the scheme orchestrated by the Producer–Defendants cannot constitute a RICO enterprise. Clearly, the Insureds did not join together as a group to perpetrate the frauds against the Plaintiffs. *See Moll,* 654 F.Supp. at 1031. Rather, it appears that the Insureds each committed similar but independent frauds with the aid of the Producer–Defendants, and that each Insured acted on a particular occasion to benefit himself or herself and not to benefit any other insured. Such a series of discontinuous independent frauds is not an "enterprise". Each is a single two-party conspiracy. *See First Nationwide,* 820 F.Supp. at 98. *See also Cullen v. Paine Webber Group,* 689 F.Supp. 269, 273 (S.D.N.Y.1988).

Even if the association-in-fact enterprise were distilled to include only the Producer–Defendants—All Purpose and its sole shareholder and full-time employee, Kitsis—there would still be no RICO enterprise. Such an association-in-fact enterprise would violate the rule that the RICO "enterprise" and the RICO "person" must be distinct. *See Riverwoods Chappaqua Corp. v. Marine Midland Bank,* 30 F.3d 339, 344 (2d Cir.1994); *Sulka v. Estate of Herink,* No. 94 CV 4999, 1996 WL 612462 (E.D.N.Y. Aug.13, 1996).

Accordingly, because plaintiffs' RICO claims are insufficient as a matter of law, their motion for Summary Judgment is denied as to those claims.

II. *New York General Business Law*

Plaintiffs also allege violations of New York General Business Law §§ 349 *et seq.* (the "Statute"). Like the RICO claims, these claims are insufficient as a matter of law.

The Statute makes unlawful deceptive acts or practices in conducting a business or furnishing a service. Any person who has been injured by reason of a violation of the section may bring an action to recover actual damages and the court may, if it finds defendant acted willfully or knowingly violated the section, triple the damages to a maximum of $1,000 and award attorneys fees to a successful plaintiff. *See New York University v. Continental Ins. Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 770 (N.Y.1995).

In order to trigger application of the Statute the alleged misconduct must be directed at consumers— including businesses acting in the role of consumers.

Dobbs, Justin 4/26/2019
For Educational Use Only

**New York Auto. Ins. Plan, Not Reported in F.Supp.2d (1998)**
RICO Bus.Disp.Guide 9611

*See Continental Ins.*, 639 N.Y.S.2d 283, 662 N.E.2d at 770–71; *Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 744 (N.Y.1995); Richard A. Givens, Supplemental Practice Commentaries, §§ 349–50 (McKinney Supp.1998).

Here, the misconduct was not directed at consumers— but at the insurance companies who provide coverage to consumers. In essence, the plaintiffs seek the protection of a statute that was intended not to protect them but to police them. Their assertion of claims under the Statute is misplaced.

Accordingly, plaintiffs' motion for summary judgment is denied as to their claims under New York General Business Law §§ 349 *et seq.*

### III. *Fraud*

*7 Unlike their RICO claims and claims under the Statute, plaintiff's allegations of fraud are well founded. Under New York law, the elements of fraud are a representation of a material fact, falsity, scienter, reliance and injury. *Continental Ins.*, 639 N.Y.S.2d 283, 662 N.E.2d at 769. The record contains uncontroverted evidence satisfying each of these elements.

The Producer–Defendants falsely represented a material fact to the Plan—namely the location of garaging and use of the Insureds' vehicles. The Producer–Defendants' knowledge of the falsity of their representations—their scienter—is amply demonstrated by the Mednik affidavit.

The Plan clearly relied on the Producer–Defendants' misrepresentations in determining the amount of premiums appropriate for each Insured. These misrepresentations resulted in damage to the plaintiffs because they were denied the true premiums for the Insureds' vehicles and assumed risk disproportionate with the premiums actually received.

As noted above, the Producer–Defendants have set forth no defense. Accordingly, I find that plaintiff's motion for summary judgment must be granted as to their fraud claims.

### IV. *Conversion*

Based upon a theory of conversion, plaintiffs' sixth claim for relief against the Producer–Defendants alleges:

> Producer–Defendants have knowingly and intentionally accepted, retained and failed to remit to Plaintiffs all or partial amounts of premium payments collected or owing from insureds.

(Complaint at ¶ 71). Plaintiffs' have provided no evidence at all to support these claims.

No mention of the Producer–Defendants' failure to remit such payments is made in the Mednik or Foth Affidavits. No specific question regarding such payments was asked at Kitsis' deposition. Accordingly, plaintiffs' motion for summary judgment is denied as to their conversion claims.

### V. *Injunctive Relief*

In their fourth claim, plaintiffs seek a permanent injunction enjoining and restraining defendants from:

> Submitting or causing to be submitted, to the Plan and/or assigned insurers: Applications and/ or requests for policy changes or insurance coverage, in either written or oral form; issuing Temporary Identification Cards; or issuing any documents related to the procurement of insurance through the plan.

(Complaint at Demand for Judgment 5(a)).

New York Auto. Ins. Plan, Not Reported in F.Supp.2d (1998)
RICO Bus.Disp.Guide 9611

Despite plaintiffs' claims, there is no need for such an injunction. The Producer–Defendants' Plan certifications have been revoked, and thus, their ability to perform the very activities which the plaintiffs seek to have enjoined has been thwarted. Accordingly, plaintiffs' motion for summary judgment is denied as to their request for injunctive relief.

## Conclusion

For the forgoing reasons, the plaintiffs' motion for summary judgment against the Producer–Defendants is granted as to liability on their fraud claim and denied as to all other claims.

This case shall be referred to Magistrate Judge Ellis for an inquest as to the plaintiffs' damages on their fraud claim.

*8 SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 1998 WL 695869, RICO Bus.Disp.Guide 9611

Footnotes

1   I note that no Insured–Defendant has yet answered the Complaint. Moreover, with the exception of Semyon Mednik, the plaintiffs do not specifically mention any of the Insured–Defendants in their motion papers or supporting affidavits. Although records concerning some of the Insured–Defendants' insurance policies are attached to the Foth Affidavit, plaintiffs do not discuss these materials or elaborate on them in any way.

    As a result, it is unclear whether the plaintiffs are seeking Summary Judgment against the Insured–Defendants as well as the Producer–Defendants. Whatever plaintiffs' intentions may be, for purposes of this Memorandum and Order, I will address solely plaintiffs' claims against the Producer–Defendants. Should the plaintiffs' wish to proceed against the Insured–Defendants, the proper method is by motion for a default—not by Summary Judgment.

2   Despite the Producer–Defendants' claims, there is no factual dispute concerning whether the Fund is a company because Plaintiff's concede that the Fund is an unincorporated entity in ¶ 5 of the complaint. See Producer–Defendants' Rule 56.1 Stmt at ¶ 4. Similarly without merit is any contention by the Producer–Defendants that the Plan is not a proper plaintiff because it lacks capacity to bring this action. The Producer–Defendants provide no authority for this proposition and it contradicts the host of cases brought by the Plan in this district and elsewhere.

3   Under Federal criminal statutory law this type of arrangement would constitute a number of criminal conspiracies with each individual Insured being a co-conspirator with the Producer–Defendants.

End of Document                                         © 2019 Thomson Reuters. No claim to original U.S. Government Works.