UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

CAPITOL 7 FUNDING,

        Plaintiff,                                 DECLARATION IN SUPPORT
                                                             OF DEFENDANTS' MOTION TO
                                                             SET ASIDE CERTIFICATES OF
                                                             DEFAULT

     v.

WINGFIELD INVESTMENT CORPORATION,

                                                             Civil Action Docket No.
                                                             17-CV-2374(RRM)(ST)

        Corporate Defendant,

BURGIS SETHNA, A/K/A SETH BURGESS,
HEATH WAGENHEIM, JOSEPH RABITO AND
DAMIAN LALJIE AND JOHN DOES 1
THROUGH 15,

        Individual Defendants.
-----------------------------------------------------------------x

     Daniel L. Bibb, Esq., hereby declares under penalties of perjury pursuant to 28 USC § 1746 that the following is true and correct:

     1.  I am an attorney duly licensed to practice law in this Court and am the attorney of record for defendants Joseph Rabito and Damian Laljie (hereinafter referred to as Rabito and Laljie).

     2. As such, I am presently familiar with the facts and circumstances of this case and its procedural history.

1

3. This Declaration is submitted in support of the defendants' motion to set aside the entry of a Certificate of Default entered on July 27, 2020.

4. Plaintiff filed its original complaint on April 14, 2017 and shortly thereafter on May 4, 2017 filed an amended complaint. The amended complaint, along with other things, alleged a violation of the Racketeer Influenced and Corrupt Organization Act (hereinafter RICO). A Second Amended Complaint (hereinafter SAC) was filed on August 31, 2017 also alleging, among other things, a violation of RICO. In sum and substance, the SCA alleged that plaintiff and all of the defendants entered into an agreement to form a corporation called 3 Leaf Capital (hereinafter 3 Leaf), the purpose of which was to purchase distressed corporate debt at a steep discount in the hopes of turning a profit by eventually collecting the entirety of the debt owed, a practice commonly call factoring. The SAC alleges that the defendants turned 3 Leaf into a corrupt organization and that the defendants siphoned off all of the profits to plaintiff's detriment.

5. On July 24, 2017, Richard Langweber, Esq. Filed his Notice of Appearance on behalf of Rabito and Laljie (and two corporate defendants, Prestige Investment Associate, Inc. and First Choice Payment Systems, Inc., hereinafter Prestige and First Choice, that have since been dismissed from the case). Between July 24, 2017 and November 13, 2018, a series of RICO case management and scheduling orders were entered by the Court. Further, a series of discovery conferences were held and at least five (5) requests for a pre-motion conference (in contemplation of filing a motion to dismiss) were submitted. During this time period as well, both the personal and corporate co-defendants went through a series of substitutions of counsel. Further, it appears from the docket entries, a series of extensions of time to answer were granted.

4.  I filed a Notice of Appearance in this matter on November 13, 2018.  At that time, I was concededly aware that an answer to the complaint had not yet been filed on behalf of Rabito, Laljie, Prestige and First Choice.  After I assumed the representation of Rabito and Laljie, Prestige and First Choice, thereafter on February 15, 2019, Steven Metcalf, Esq. assumed the representation of the remaining co-defendants, Burgis, Wagenheim and Wingfield Capital.

5.  During this timeframe I had a number of in person and telephone conversations with Nicholas Bowers, counsel for plaintiff.  At least one of those in person discussions with Mr. Bowers took place both inside and outside Judge Tiscione's courtroom on December 11, 2018.  One of the subjects of that conversation was the theory(ies) of liability of my clients.  I informed Mr. Bowers that the Prestige and First Choice corporate defendants (now dismissed) were corporate entities wholly owned by Rabito and were not in any way associated with any of the co-defendants or 3 Leaf.  I further informed Mr. Bowers that Rabito was neither an employee, owner, agent, manager or stockholder of Wingfield Capital nor was he an employee, owner, agent, manager or stockholder of 3 Leaf.  I informed Mr. Bowers that the only involvement that Mr. Rabito had in this matter was that one of the corporate entities he owned was an office space leaseholder and that, as an owner of the entity, he sublet a portion of his leasehold to 3 Leaf.

5.  During that conversation, I also informed Mr. Bowers that Laljie's only involvement with 3 Leaf was that of what I termed an "operations manager."  I told Mr. Bowers that Laljie's job was to obtain office space (which he did through the Rabito owned entity), office equipment, computers, telephone systems and office supplies so that 3 Leaf could do business.  I informed him that Laljie had nothing whatsoever to do with the business end of 3 Leaf, that is buying distressed debt.

3

6. Mr. Bowers and I had further telephone conversation concerning discovery issues and the discovery schedule. During these conversations, I informed Mr. Bowers that when 3 Leaf abruptly closed its doors after only a short time in operation, both Rabito and Laljie simply walked out the door and thus had very little if anything at all to produce in discovery. I further informed Mr. Bowers that, even if the allegations in the complaint were true as against the other co-defendants, my clients were not involved with the "business" of 3 Leaf nor were they involved in any of the allegations contained in the complaint. On at least one occasion, that I recall being the in person conversation on December 11, 2018, Mr. Bowers acknowledged that Rabito, Laljie, Prestige and First Choice were "throw-in" defendants, meaning that they had been "thrown into" the complaint to see if discovery would somehow show their involvement (which discovery produced thus far by the co-defendants clearly has not). If true, as I believe them to be, these circumstances clearly indicate that Rabito and Laljie have a meritorious defense to this action.

7. Thereafter on March 22, 2019, all defendants were granted permission to file a motion to dismiss. On June 21, 2019, motions to dismiss were filed by all defendants. On that day as well, a reply was submitted by plaintiff.

8. On May 29, 2020, almost a year after the filing of the motion to dismiss, the Court granted the motion to dismiss the SAC in its entirety as against Prestige and First Choice. Further, counts alleging fraud and unjust enrichment against Rabito and Laljie were also dismissed. The motion to dismiss was otherwise denied as to Rabito and Laljie and the c-defendants.

9. On June 12, 2020, a telephone conference was held among the Court and all the parties. Discovery issues were discussed and a discovery deadline was set for January 11, 2021.

During that teleconference, the parties never discussed the possibility of a default being entered for failure to answer the SAC.  At the time, although I had been aware early on in my representation of Rabito, Laljie, Prestige and First Choice that an answer had not yet been filed on behalf of the defendants, due to circumstances related to my health and the passage of time from November 2018 until June 2020, I had completely forgotten that an answer had not been filed. Without further discussion or notice, plaintiff file for the Certificates of Default on July 29, 2020.

      10.  During the time from August 2019 until today, I have been beset by a series of serious health issues that have consumed much of my time and physical and mental energy. After being in relatively good health for the five (5) years preceding August 2019, I have since been diagnosed with degenerative arthritis in both my knees, requiring left knee replacement surgery and over a year of rehabilitation.  Despite the rehabilitation, my left knee is still quite painful and limited in its movement.  I have also been advised that I might require right knee replacement surgery in the not too distant future.  In addition, I have been diagnosed with prostate cancer that has required multiple biopsies, multiple MRIs and repeated medical consultations and appointments.[1]  I have a CT scan and a bone scan scheduled for early February 1 (to make sure the cancer has not spread) with a radical prostatectomy scheduled for February 9, 2021.  Finally, I have had to have multiple procedures on my right had to mitigate a degenerative condition and have been diagnosed with bilateral peripheral neuropathy in both my feet that causes numbness and tingling and sometimes excruciating pain.  Finally, I have been diagnosed with cardiomyopathy, a thickening and weakening of the heart's main pumping chamber, the left

---

[1] I have consulted with at least three (3) separate urologists and two (2) radiation oncologists all of whom have advised me that the state the cancer is in requires either a radical prostatectomy or a series of seven (7) radiation treatment over the course of two (2) weeks.  I have opted for surgery.

ventricle. While not life threatening, this condition has complicated the diagnosis and treatment of my other medical conditions. In total, in the past eighteen (18) months I have had in excess of 90 medical appointment, procedures and tests. While I certainly realize that my medical conditions are not an excuse, they are certainly circumstances that indicate that the default was not willful, nor was it engaged in to gain some type of advantage and that my clients' conduct did not in any way contribute to the default.

11. On July 20, 2020, plaintiff requested the entry of a Certificate of Default for Rabito and Laljie. Annexed as Exhibits A and B respectively are a true and correct copies of the Plaintiff's counsel's Requests for Certificates of Default for Rabito and Laljie.

12. On July 27, 2020, the Court Clerk entered Certificates of Default as to both Rabito and Laljie. Annexed hereto as Exhibits C and D respectively are true and correct copies of the Certificates of Default for Rabito and Laljie.

13. On January 11, 2021, co-codefendants filed a motion to set aside the Certificates of Default as well as a motion to extend the discovery deadline. On January 11, 2021, Judge Tiscione filed an order setting a telephone conference for January 20, 2021. On January 20, the telephone conference was held. A discovery deadline was set for July 19, 2021. In addition, during the conference, plaintiff's counsel informed the Court and opposing counsel that he had been on family leave for at least the past six months due to the birth of a child, had only recently returned to work part time and was not scheduled to return to work full time until the end of February.

14. Further, plaintiff has not been prejudiced in any manner whatsoever by the delay in filing an answer. Indeed, without notice to any of the defendants and as plaintiff's counsel recently stated in a telephone conference held among Judge Tiscione and all counsel, plaintiff

has engaged in third party discovery by serving *subpoenas duces tecum* on various banking institutions. In addition, plaintiff's counsel has been on family leave for at least the past six months. Even if an answer had been filed, it is extremely difficult to see how anything of substance would been accomplished since plaintiff's counsel was on leave taking care of a newborn.

15. Defendants' Answer is attached as Exhibit E.

WHEREFORE, it respectfully requested that the Court grant the relief requested herein, vacate the Certificates of Default and set a schedule for filing a response to this motion, any cross motions and replies as set forth in the Court's order dated January 21, 2021 (ECF 98).

Dated: January 23, 2021
New York, New York

*s/ Daniel L. Bibb*
Daniel L. Bibb, Esq. (db8060)
The Law Office of Daniel L. Bibb, LLC
261 Madison Avenue, 12th Floor
New York, New York 10016
(212) 736-3936

To: Nicholas Bowers, Esq.
Gary Tsirelman, PC
Attorneys for Plaintiff
129 Livingston Street
Brooklyn, NY 11201
nbowers@gtmdjd.com
(VIA ECF)