UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

CAPITOL 7 FUNDING,

        Plaintiff,

  v.

WINGFIELD INVESTMENT CORPORATION,

                                                  Docket No.
                                                  17-CV-2374(RRM)(ST)

        Corporate Defendant,

BURGIS SETHNA, A/K/A SETH BURGESS,
HEATH WAGENHEIM, JOSEPH RABITO AND
DAMIAN LALJIE AND JOHN DOES 1
THROUGH 15,

        Individual Defendants.
----------------------------------------------------------------x

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO SET ASIDE THE ENTRY OF CETIFICATES
OF DEFAULT PURSUANT TO FED. R. CIV. PRO. 55(a)

                                                  DANIEL L. BIBB, ESQ.
                                                  The Law Office of Daniel L. Bibb, LLC
                                                  261 Madison Avenue, 12th Floor
                                                  New York, New York 10016
                                                  T. (212) 736-3936
                                                  F. (212) 812-3299
                                                  dan@danielbibblaw.com

I.  PRELIMINARY STATEMENT

Defendants respectfully submit this Memorandum is support it their motion to vacate the Certificates of Default.

Defendants respectfully request that this Court vacate the Certificates of Default entered herein pursuant to Fed. R. Civ. Pro. 55(a) because there is good cause show for Defendants' delay in filing an Answer in this action.  This initial Complaint was filed during the summer of 2017 followed up shortly thereafter by the filing of an Amended Complaint and then a Second Amended Complaint (hereinafter SAC).  The procedural history of this case is set forth more fully in the Declaration of Daniel L. Bibb, Esq. as well as the multitude of filings on ECF for the last 3 ½ years.  Indeed, a motion to dismiss the SAC was litigated before the Hon. Roslyn Mauskopf, which took over eleven (11) months to decide.  After the decision was rendered dismissing Prestige and First Choice from the SAC and dismissing counts of fraud and unjust enrichment as against Rabito and Laljie, a June 11, 2020 telephone conference was held during which there was never any mention that an answer had yet to be filed on behalf of any of the defendants.

While I was aware of the issue when I was retained and filed my Notice of Appearance, due to the passage of time and intervening serious health issues, I completely forgot that an Answer had not been filed until such time as the plaintiff moved for Certificates of Default.  At that time, New York City and the surrounding metropolitan area remained in a Covid 19 lockdown.  My file in this matter was in my office in midtown Manhattan[1] and, due to the fear of the virus and my seriously compromised health[2], I was unable to retrieve the file until late

---

[1] I live in a suburb of new York City approximately 20 miles from my office.
[2] Despite all of the precautions taken since March 2020, I was diagnosed with Covid 19 on January 12, 2021. Thankfully, my symptoms are similar to that of a bad cold.  I have recently been informed, however, by my urologist that this diagnosis might complicate plans for the surgery scheduled for February 9.

2

September. After resolving some of my health issues (except the upcoming scans and surgery), I submit the instant application on behalf of the defendants.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

The statement of facts and procedural history are set forth in detail in the co-defendants' motion and are adopted here as if set forth more fully herein. The statement of facts and procedural history are also set forth more fully in the attached Declaration of Daniel L. Bibb, Esq. and will not be repeated here except as follows.

What must be addressed more fully herein is the fact that both Rabito and Laljie have meritorious defenses to this action. First, with regards to Rabito, he was not involved with 3 Leaf Capital (the business that is the subject of this complaint) at all. He was not an employee. He was not an agent. He was not a manager. He was not a shareholder. Rabito had no interest in 3 Leaf except as a landlord. A Rabito owned corporate entity held an office space leasehold. That entity sublet a portion of that leasehold to 3 Leaf. He did no business with 3 Leaf or plaintiff other than that of a landlord.

With regard to Laljie, he was what can only be referred to as an "operations manager." He had nothing to do with the actual business of 3 Leaf, that is buying distressed debt. He was responsible for office space (which was obtained from the Rabito owned entity), office supplies, office equipment, telephone systems and computers among other things that had nothing to do with the actual business of 3 Leaf.

Under these circumstances, even if every allegation in the SAC were true (something that is certainly not conceded here), neither Rabito nor Laljie can be held liable for conduct they did not commit, knew nothing about or were ever involved in. There is simply absolutely no theory of liability that would apply in these circumstances. One cannot be liable for wrongdoing if one

did not participate in some manner in that wrongdoing. Rabito and Laljie did not participate in any manner, even assuming there was wrongdoing at all.

Finally, the defendants refer the Court to arguments in the Motion to Dismiss (ECF 81) in further support of the fact that Rabito and Laljie have several meritorious defenses to this action.

### III. ARGUMENT

Federal Rule of Civil Procedure 55(c) provides that an entry of default may be set aside upon a showing of good cause. FED. R. CIV. P. 55(c). The Second Circuit's "good cause" standard for setting aside entry of default is the same as that for setting aside default judgment under Rule 60(b), but the test for setting aside entry of default is less rigid and is more generous to the party in default.

The standard for setting aside an entry of default pursuant to Rule 55(c) is "lenient" and less rigorous than the standard for setting aside a default judgment pursuant to Rule 60(b). American Airlines Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 59 (2d Cir. 1996); Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981) (describing the Rule 55(c) standard as "lenient").

Rule 55(c) provides that relief from the entry of a default may be granted for "good cause shown." FED. R. CIV. P. 55(c) (highlighting "For good cause shown the court may set aside an entry of default. . ."). Although Rule 55(c) does not define "good cause," the Second Circuit has instructed that district courts must consider principally "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993). Of course, the decision on whether to grant relief from the entry of default is left to the sound discretion of the district court as it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties. *Id.*

The Court considers three factors when deciding whether to set aside default: (1) whether the defendant's culpable conduct led to the default; (2) whether the defendant has a meritorious defense; and (3) whether setting aside default would prejudice the plaintiff. *Id.* at 925-26. In addition, "[t]he law does not favor defaults," and "therefore, any doubts as to whether a party is in default should be decided in favor of the defaulting party." Bonita Packing Co. v. O'Sullivan, 165 F.R.D. 610, 614 (C.D. Cal. 1995).[3]

Each of these factors weighs in favor of setting aside the Certificates of Default. First, the default was not due in any way to the fault of Rabito and/or Laljie. Indeed, an attorney appeared for them shortly after the initial complaint was filed. I appeared when their prior counsel was unable to continue his representation. I have participated in multiple pretrial conferences with Judge Tiscione related to discovery and scheduling issues, the most recent taking place on January 20, 2021. I have had multiple conferences with plaintiff's counsel related to theories of liability and discovery related issues. I litigated a motion to dismiss in which the two (2) corporate entities were dismissed from the case and two (2) counts of the complaint were dismissed as to both Rabito and Laljie. Further, I have reviewed in excess of amost 900 pages of discovery provided by Co-defendant's counsel. This is not a case where

---

[3] A motion to vacate a default judgment is "addressed to the sound discretion of the district court." SEC v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998). As relevant here, a Rule 60(b) motion to vacate a judgment may be granted on the basis of "excusable neglect," Fed. R. Civ. P. 60(b)(1), or for "any other reason justifying relief from the operation of the judgment," Fed. R. Civ. P. 60(b)(6); see also FED. R. CIV. P. 55(c) (providing that default judgments may be set aside in accordance with Rule 60(b)).

Given the breadth of this discretion, however, the Court of Appeals has suggested that courts, in deciding whether to vacate a default judgment, consider three factors: (1) whether the default was "willful"; (2) whether a meritorious defense is presented; and (3) whether setting aside the default would prejudice the non-moving party. *McNulty,* 137 F.3d at 738. While none of these factors is alone dispositive, the Court should consider and weigh all three. Gunnells v. Teutul, 469 F. Supp. 3d 100, 102–03 (S.D.N.Y. 2020).

neither Rabito or Laljie willfully failed to appear in the case until now. The facts are quite the opposite. Indeed, this is a case that, except for the last several months, has been actively litigated by all parties.

Further, over the eighteen (18) months I have experienced unprecedented health problems that have consumed much of my time and physical and mental energy, starting with a diagnosis of bilateral arthritis in my knees and right knee replacement surgery and ending with what is hoped will be a successful radical prostatectomy on February 9. In between, there have been a diagnosis of cardiomyopathy, multiple procedures to restore the full use of my right hand and multiple prostate biopsies and MRIs. In total, in the last 18 months, I have had a total in excess of ninety (90) medical appointments, procedures and tests, the vast majority of which were during the also unprecedented time of a global pandemic which often complicated and delayed many of these appointments, procedures and tests.

The second and third factors are even easier to apply. Second, both Rabito and Laljie have meritorious defense to this action. A Rabito owned corporate entity was 3 Leaf's landlord. Laljie was an "operations manager," ensuring that the company had computers, telephones and office supplies so that 3 Leaf could do its business. Neither Rabito nor Laljie had anything whatsoever to do with the actual business of 3 Leaf, that is buying distressed debt. It would be a manifest travesty of justice to impose financial liability on two people who had not involvement in the allegations contained in the SAC.

Lastly, plaintiff has not been prejudiced in any way. Despite being in the midst of a global pandemic, plaintiff has said, in a recent conference before Judge Tiscione, it has been engaging in third party discovery and has obtained bank and other records. In addition, Judge Tiscione set a discovery deadline of July 19, 2021. If that deadline holds true, this case will be

6

ready to be tried in the Fall of 2021. Finally, plaintiff's lead counsel has been on family leave for at least the past six (6) months due to the birth of a child. It is extremely difficult to see how plaintiff has been prejudiced by the delay in the filing of an answer of a little over seven (7) months when plaintiff's counsel has been on leave during that entire time. Indeed, plaintiff's counsel will not be returning to work full time until the end of February.

For these reasons, it is respectfully requested that the Certificates of Default entered against Defendants Joseph Rabito and Damien Laljie be vacated.

### IV. CONCLUSION

WHEREFORE, Defendants Joseph Rabito and Damien Laljie respectfully request that the Certificates of Default be vacated and that the Court provide such other and further relief the Court may deem just an proper. Defendants Joseph Rabito and Damien Laljie further respectfully request the Court adopt the briefing schedule for this motion and any response and/or cross motion as set forth in ECF 98.

Dated: January 23, 2021
New York, New York

>Daniel L. Bibb, Esq. (db8060)
>Counsel for Joseph Rabito and Damien Laljie
>The Law Office of Daniel L. Bibb, LLC
>261 Madison Avenue, 12th Floor
>New York, New York 10016
>T. (212) 736-3936
>F. (212) 812-3299
>C. (201) 390-5278

8