```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
CAPITAL 7 FUNDING,
                                                                    Docket No. 17-cv-2374
                Plaintiff,

        - against -                                                 DECLARATION IN SUPPORT
                                                                    OF MOTION FOR A DEFAULT
WINGFIELD CAPITAL CORP., et al.,                                    JUDGMENT

---------------------------------------------------------------X
```

## DECLARATION OF FARID PEYSAKHOV IN SUPPORT OF PLAINTIFF'S MOTION FOR A DEFAULT JUDGMENT

I, Farid Peysakhov declare pursuant to 28 U.S.C. § 1746 under penalty of perjury that the following is true and correct:

1. I am an owner, partner in, and operations manager of Plaintiff Capital 7 Funding ("Capital 7") and submit this declaration under the penalty of perjury in support of Plaintiff's motion for a default judgment against Wingfield Capital Corporation ("Wingfield"), Burgis Sethna, a/k/a Seth Burgess ("Sethna"), Heath Wagenheim ("Wagenheim"), Joseph Rabito ("Rabito"), and Damina Laljie, a/k/a Damian Laltie ("Laljie"). I submit this declaration in support of Capital 7's opposition to Defendants' motions to vacate their certificates of default. I also submit this declaration to set forth the amounts paid by Plaintiff to Defendants and the damages alleged in the Second Amended Complaint ("Complaint") as the result of Defendants' fraudulent acts and scheme.

2. I have been an owner, partner in, and operations of Capital 7 since its inception. I have overseen the day-to-day operations and the finances of Capital 7 since its inception. I have had full access to Capital 7's banking and financial records and overseen the creation of financial reports for Capital 7 since its inception. During the time period covered by the Complaint, from September of 2015 through January of 2017, I reviewed and, based on

    Defendants' misrepresentations, authorized the payments Plaintiff made to Defendants. During this time period I also reviewed the payments Capital 7 received from Defendants and 3 Leaf Capital, LLC ("3 Leaf") to reimburse Capital 7. During this time period I also oversaw the creation of business records relating to the business Capital 7 had with 3 Leaf and Defendants. During this time period I also communicated with Defendants, their associates and employees regarding the busines of 3 Leaf.

3. I have reviewed the Complaint and attest to the truth of the facts set forth therein.

4. Laljie is a managing member of Wingfield, as reflected in the operating agreement between Wingfield and Capital 7 attached to the Bowers declaration as Exhibit 1.

5. While 3 Leaf was in ostensible operation between September of 2016 through September of 2016, I communicated with Defendants Laljie and Rabito many times regarding the business of 3 Leaf, including discussion of its financial status, the amount of purchases it made, and the purported payments made by 3 Leaf's purported clients.

6. Rabito appeared to act as 3 Leaf's chief financial officer and appeared to demonstrate extensive knowledge about 3 Leaf's finances.

7. Laljie appeared to act as 3 Leaf's chief operating officer and appeared to demonstrate knowledge about 3 Leaf's operations, including its agreements with its customers, the status of payments made by those customers, and 3 Leaf's finances.

8. As set forth in the Complaint, Defendants Rabito, Laljie, and Wagenheim concealed Sethna's activities, falsified records to conceal the scheme from me, among others, provided me with falsified expense reports that inflated the day-to-day costs of running 3 Leaf to conceal siphoned money, and misrepresented the amounts recouped from 3 Leaf's supposed customers.

9. Laljie and Rabito also repeatedly attended meetings with me and other representatives of Plaintiff in which they bolstered Sethna's false assurances that 3 Leaf's business was operating smoothly.

10. Laljie and Rabito were in this way central to Defendants' scheme to defraud Capital 7.

11. In anticipation of the application for default judgment, I have reviewed Capital 7's financial and business records created in the ordinary course of Capital 7's business, including the operating agreement between Plaintiff and Defendants regarding 3 Leaf, supposed agreements between 3 Leaf and its customers for the sale of future receivables to Plaintiff and a summary statement created contemporaneously that tracked the payments made to Defendants for each deal with a 3 Leaf customer, including the initial amounts intended to purchase the customers' receivables, the amount of receivables purchased that the customer and Defendants would repay to Plaintiff, the independent sales organization ("ISO") fees Defendants claimed to pay third parties, the payments received by Capital 7 from Defendants and 3 Leaf, and the amounts that remained to be collected. The summary statement was created under my supervision based on agreements for the sale of receivables signed by 3 Leaf's customers, bank records from Capital 7's accounts, and contemporaneous financial records. Exhibit 2 attached to the Bowers Declaration is a spreadsheet prepared by counsel containing information extracted from the summary statement, the underlying financial records, and agreements for the sale of receivables between 3 Leaf and its customers. I compared Exhibit 2 to the summary statement and confirmed that the information in it is correct and accurate.

12. Based upon my review of the above-mentioned documents, I have determined that Plaintiff paid Defendants a total of $2,539,299.00 for the purposes of funding the purchase of

receivables from entities Defendants presented as 3 Leaf's customers as a result of the fraudulent scheme perpetrated by Defendants and described in the Complaint. Based on my review of the same documents, I have determined that Plaintiff has paid a total of $253,920.00 to Defendants for ISO fees Defendants claimed were necessary to facilitate the purchase of receivables from entities Defendants presented as 3 Leaf's customers. Based on my review of the same documents, I have determined that 3 Leaf and the Defendants have repaid $1,619,881.00 to Plaintiff.

13. Based on my review of the same documents, I have determined that Capital 7 expected a total of $3,517,234.00 from Defendants and 3 Leaf's purported customers. Capital 7 based this expectation on Defendants' promises, assurances, and the purported agreements between 3 Leaf and its purported customers. Based on my review of the same documents, $1,897,353.00 of that amount remains unpaid to Capital 7.

14. Had I, Capital 7 or its employees or principals known that Defendants both intended to use and actually used 3 Leaf and the entities Defendants presented as 3 Leaf's customers to siphon money from Plaintiff, Capital 7 would not have made any payments to Defendants. Had I, Capital 7, or any of its employees or principals known that Defendants had fabricated customers, Capital 7 would not have made any payments to Defendants.

15. I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, and that the amounts herein are accurate and owed to the Plaintiff.

**WHEREFORE**, it is respectfully requested that the Court grant Plaintiff's application for a default judgment.

Dated: Brooklyn, New York
March 12, 2021

Respectfully Submitted,

Farid Peysakhov